# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JASON L. EDMONSON,<br><br>　　　　　　Plaintiff,<br>v.<br><br>CLARISSA RAMIREZ, ANTHONY MATUSHAK, MICHAEL SCHULTZ, MICHELLE HAESE, CHRISTOPHER STEVENS, STEPHANIE HOVE, PAUL KEMPER, and SARAH COOPER,<br><br>　　　　　　Defendants. | Case No. 23-CV-832-JPS<br><br>**ORDER** |

　　　　Plaintiff Jason L. Edmonson, an inmate confined at Green Bay Correctional Institution ("GBCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On November 27, 2023, the Court screened Plaintiff's amended complaint, found that it failed to state a claim, and allowed him the opportunity to amend. ECF No. 12. On December 11, 2023, Plaintiff filed a second amended complaint. ECF No. 13. This Order screens that complaint.

1. **FEDERAL SCREENING STANDARD**

　　　　Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2.     **PLAINTIFF'S ALLEGATIONS**

Plaintiff's allegations in the second amended complaint do not meaningfully change his factual allegations from his last pleading. *See* ECF Nos. 11, 13. Plaintiff's allegations relate to his treatment at GBCI. ECF No.

13 at 3. On May 1, 2023, Plaintiff suffered a mental episode. *Id*. In order to receive care from psychological staff in a reasonable time, Plaintiff attempted a fake act of self-harm by placing water in an employee's beverage and drinking it on camera in front of staff. *Id.* As Plaintiff returned from chapel services, he approached a transparent container with a brownish-green beverage in it and a dry white substance on top. *Id.* Plaintiff opened the container and began to poor a tube of water into it. *Id.* Plaintiff stopped when he noticed Defendant Ramirez ("Ramirez") watching him. *Id.* Ramirez asked Plaintiff what he was doing to his drink. *Id.* Plaintiff told Ramirez that he was going to drink it. *Id.* Ramirez then picked up the container, held it up to about eye-level, and dead-dropped it to the floor in front of Plaintiff. *Id.* The beverage immediately began to foam and turn a grayish color. *Id.*

Ramirez had Plaintiff transported to the Restrictive Housing Unit ("RHU") and took the container to the Supervisor's Office where a photo was taken. *Id.* at 4. On May 22, 2023, Plaintiff contested conduct report #00319844 in a hearing where he read from a partially memorized statement. *Id.* During the hearing, Plaintiff told Defendant Matushak ("Matushak") that he suffers from anxiety/panic attacks and PTSD, that he was recently moved near the unit's alarm and it triggered him, that he did not have two to three weeks to wait for psychological services ("PSU"), and that his actions were an attempted fake suicide to immediately meet with PSU concerning his mental health needs. *Id.* Plaintiff told Matushak that DOC policy requires the employee to describe the facts and list the sections of the chapter that were violated. *Id.* Instead of following policy, Ramirez described assumptions and lies, omitted facts that did not fit, and listed sections she alleged that Plaintiff violated in the conduct report. *Id.* Plaintiff

was found not guilty of "Endangering Safety 303.20" because it was only water, and he was going to drink it. *Id.*

Plaintiff further informed Matushak that he should impose the remaining offenses of "Lying 303.31" and "Damage or Alteration of Property 303.38" as minors because the only reason they were listed as majors was because Ramirez failed to adhere to procedural requirements. *Id.* at 5. Matushak failed to follow Plaintiff's instructions. *Id.* Matushak stated that Plaintiff's testimony seemed rehearsed and unbelievable. Matushak found Plaintiff guilty of each major offense and imposed a punishment of 240 days disciplinary separation with a $10 restitution for the container. *Id.*

Defendant Schultz ("Schultz") signed Plaintiff's conduct report after reviewing Ramirez's description of incident. *Id.* Defendant Haese ("Haese") approved the reasons for decision and evidence relied on by Matushak. *Id.* Plaintiff appealed the unanimous decisions of the committee to the Warden, Defendant Stevens ("Stevens"), on the grounds that: (1) the evidence was not sufficient for a finding of guilt on Endangering Safety; and (2) the evidence was not sufficient for a finding of guilt on the remaining offenses. *Id.* Plaintiff also appealed to Stevens on procedural grounds for Ramirez's failure to adhere to the procedural requirements of 303.67(2), which substantially affected a finding of guilt and Plaintiff's ability to provide a defense. *Id.* at 6. Stevens affirmed the unanimous decision by Matushak and Haese. *Id.*

Schultz, Matushak, Haese, and Stevens did not help Plaintiff contact PSU for his mental health needs. *Id.* Since the time of this incident, Plaintiff has written many requests to meet with PSU but he has yet to meet with them. *Id.*

3.  **ANALYSIS**

As mentioned above, Plaintiff failed to make meaningful changes to his factual allegations after receiving the Court's guidance in the prior screening order. For completeness, the Court reiterates the analysis from the prior screening and finds that the second amended complaint fails to state a claim upon which relief may be granted.

The Court finds that Plaintiff may not proceed against Defendants on a Fourteenth Amendment claim for a deprivation of liberty without due process. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher

than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697–98. On the one hand, "six months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff's second amended complaint does not contain facts showing that Defendants interfered with a liberty interest. Plaintiff alleges

Page 6 of 8
Case 2:23-cv-00832-JPS   Filed 04/19/24   Page 6 of 8   Document 14

generally that he was in segregation for 240 days following a finding of guilt at a disciplinary hearing, but he does not elaborate on any of the conditions he experienced during that time. On these facts alone, the Court cannot determine that Plaintiff suffered an atypical and significant deprivation. *See Marion*, 559 F.3d at 698. Accordingly, based on the allegations in Plaintiff's second amended complaint, the Court cannot determine that Plaintiff had a protected liberty interest. As such, Plaintiff may not proceed on a due process claim.

### 4. CONCLUSION

In sum, the Court finds that the second amended complaint fails to state a claim upon which relief may be granted. Plaintiff was already provided the opportunity to amend his complaint based on the Court's guidance in the prior screening order, and he failed to amend his factual allegations in any meaningful way. The Court therefore finds that further amendment would be futile. *See Runnion ex rel. Runnion v Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). As such, the Court is obliged to dismiss this action for the failure to state a claim and will accordingly assess a "strike" under 28 U.S.C. § 1915(g).

Accordingly,

**IT IS ORDERED** that this case be and the same is hereby **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the failure to state a claim; and

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of April, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.